IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEFFREY E. WALKER,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER JONES, et al.,<br><br>Defendant(s). | ) | No. C 08-0757 CRB (PR)<br><br>ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REFERRING MATTER TO MAGISTRATE JUDGE FOR SETTLEMENT PROCEEDINGS<br><br>(Docket # 68 & 98) |

Plaintiff, a state prisoner at the California Men's Colony in San Luis Obispo (CMC), filed the instant pro se action for damages under 42 U.S.C. § 1983 alleging that on January 3, 2006, while he was a pretrial detainee at the San Francisco County Jail (SFCJ), jail officials used excessive force against him and denied him subsequent medical attention.

Per order filed on August 11, 2009, the court found that, liberally construed, the allegations in the Second Amended Complaint (SAC) appear to state cognizable claims under § 1983 for use of excessive force and for deliberate indifference to serious medical needs against the named defendants – correctional deputies Jones, Kuhns, Nuti, Quock, James and Newcomer, Sergeant Cabebe, and medical staff members Asuncion Bendebel and Stacey Nelson – and ordered the United States Marshal to serve them.

Defendants move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also claim that they are entitled to qualified immunity. Plaintiff did not file an opposition despite being granted numerous extensions of time; instead, he seeks yet more time.

**DISCUSSION**

A. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

The "weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. At summary judgment, the evidence of the nonmoving party must be believed and all reasonable inferences must be made in his favor. Id. But if the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249-50.

B.    Legal Claims and Analysis

Defendants argue that they are entitled to summary judgment and qualified immunity from plaintiff's excessive force and deliberate indifference to serious medical needs claims. Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's

mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[1]

1. Excessive use of force

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from excessive and brutal use of physical force. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v Wolfish, 441 US 520, 535-39 (1979)). Resolving such a substantive due process claim requires courts to balance several factors focusing on the reasonableness of the officers' actions given the circumstances. White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990). These factors include (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. Id. In order to prevail on an excessive force claim, a pretrial detainee must show the use of force was excessive because it was not reasonably necessary to maintain or restore order and/or discipline. Cf. Hydrick v. Hunter, 500 F.3d 978, 997-98 (9th Cir. 2007) (excessive force claim brought by civilly confined plaintiff), rev'd on other grounds, 129 S. Ct. 2431 (2009).[2]

Defendants argue that they are entitled to summary judgment on plaintiff's

---

[1] Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

[2] Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied to excessive force claims by pretrial detainees (and civilly confined plaintiffs) because the Eighth Amendment's malicious and sadistic standard set out in Hudson v. McMillian, 503 U.S. 1 (1992), provides a floor for the level of protection that pretrial detainees (and civilly confined plaintiffs) must receive under the Fourteenth Amendment. See Hydrick, 500 F.3d at 998.

excessive force claim against correctional deputies Jones, Kuhns, Nuti, Quock, James and Newcomer because plaintiff has not set forth sufficient evidence showing that there is a genuine issue for trial. In support, defendants submit declarations and documentary evidence showing the following:

Plaintiff was a pretrial detainee at SFCJ from May 25, 2005 to January 17, 2006, when he was convicted of felony charges and sent to state prison. During plaintiff's detention at SFCJ, he was housed primarily in segregated administrative housing due to mental health issues and his frequent acting out toward deputies, other inmates and members of the Jail Heath Services (JHS) and Jail Psychiatric Services (JPS). At the time of the incident at issue, plaintiff was housed in the C Pod of Jail # 8 because this modern jail pod (with plexiglass barriers) allows for close observation of inmates at risk for harming themselves.

On the night of January 3, 2006, plaintiff was removed from his cell inside the C Pod of Jail # 8 and placed in a safety cell because he was yelling and repeatedly kicking his cell door and banging his head against it. As soon as plaintiff realized that he was going to be taken to the safety cell, he began resisting the deputies' efforts to take him there. Even after he was handcuffed, plaintiff continued to lunge his body around and kick. Because plaintiff was forcibly resisting being taken to the safety cell, the deputies used compliance holds and physically escorted him to the cell against his will. But the deputies used no more force than necessary to control and place plaintiff in the safety cell. No deputy beat, punched or kicked plaintiff. And plaintiff was not injured as a result of his being placed in the safety cell. Plaintiff's involuntary placement in the safety cell took approximately one minute.

/

Shortly after being placed in the safety cell, plaintiff was examined by

JHS nurse Bendebel. Bendebel noted that plaintiff was jumping up and down, standing on the toilet and hitting the ceiling with his fist. Plaintiff told her that "deputies had stepped on him," but she found "no visible traumas on exam." JHS Custodian Decl. Ex. C at 1. Bendebel only noted that plaintiff had an abrasion on his left cheek and that his wrist appeared slightly swollen.

Under defendants version of the facts, no reasonable jury could find that the force used was not reasonably necessary to maintain or restore order and/or discipline. Plaintiff presented a serious risk of harm to himself by banging his head against his cell door and resisted the deputies' efforts to place him in the safety cell by refusing to be handcuffed and by lunging his body around and kicking. Plaintiff's actions created a need for the deputies to apply reasonable force to control him in order to maintain discipline and order. See White, 901 F.2d at 1507. Under the circumstances, handcuffing plaintiff and using compliance holds to take him to the safety cell against his will and without suffering significant injuries was not excessive or brutal so as to offend due process. See id.

Plaintiff's version of the facts is different. Although he did not submit an opposition, the operative SAC is a verified complaint which may be used as an opposing affidavit under Rule 56. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff alleges under penalty of perjury:

> 8. [On January 3, 2006, Officer] Jones came to plaintiffs cell door along with Officer Kuhns, Officer James, Officer Quock, Officer Nuti along with Sr. Deputy Newcomer, and was asked to cuff up.
>
> 9. The plaintiff asked the Sr. Deputy why she wanted him to cuff up and was told she Newcomer only wanted to check his speaker

on the cell wall.

10. The plaintiff complied with all orders and turned around put his hands through slot back wards and cuffed up.
. . . .

11. Immediately officers Jones held the hand cuffs.

12. The defendants opened the cell door while pulling plaintiff back wards.

13. The defendants Jones, Officer Kuhns, James and Officer Quock immediatly starited using force.

14. Defendants Jones started kneeing plaintiff along with Officer Kuhns in the gut as Jones and Officer Kuhns took plaintiff to the ground.

15. Defendants Officer James, Officer Quock also participated in taking plaintiff to the ground all while all the defendants started hiting kicking and using excessive restraint techniques to cause pain.

16. Defendants Jones and officers after assults started to drag plaintiff backwards while cuffed all the time using restraint techniques.

17. The restraint techniques were wrist locks on both wrist while pushed against medical hand cuffs used to cause pain.

18. Plaintiff was taken to safety cell all the while being called names.

19. At the safety cell, defendants Jones, Officer Kuhns, Officer James, and Officer Quock [and] Officer Nuti all participated in attacking plaintiff

20. Kicking in the ribs, hiting and using excessive restraints on wrist, legs as you see in a hog tie possition.

21. As defendants began to disperse plaintiff was layed face down hands in restraints while officer Quock placed a boot on the side of plaintiffs face applying pressure.

22. Defendants Jones, Officer Kuhns and Officer Quock and Officer Nuti all told plaintiff not to move until they backed out of cell.

23. All defendants then backed out while calling plaintiff names.

24. During these events Newcomer supervising Sr. Deputy remained outside cell and had been present during all acts and

failed to intervene to stop officers.

SAC at 2-3 (sics in original).

Viewing the evidence in the light most favorable to plaintiff, as we must, a reasonable jury could find that defendants used unreasonably excessive force against plaintiff. Even if plaintiff's actions created a need for defendants to apply reasonable force to place plaintiff in the safety cell in order to maintain discipline and order, hitting, kicking and stepping on plaintiff's face after defendants presumably had handcuffed plaintiff supports the finding that some of the force used by defendants was unreasonably excessive or brutal, even if plaintiff did not suffer significant injuries. See Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (use of force that is more than de minimus and/or use of force of a sort repugnant to the conscience of mankind may violate 8th Amendment even if plaintiff did not suffer significant injuries); see also Hydrick, 500 F.3d at 998 (if detainees allege conduct that sinks below protections afforded prisoners under 8th Amendment, their claim certainly states a violation of the their due process rights under the 14th Amendment).

Nor are defendants entitled to qualified immunity on plaintiff's excessive force claim at this stage in the proceedings. Viewing the facts in the light most favorable to plaintiff, it cannot be said that a reasonable officer in defendants' position would have believed that hitting, kicking and stepping on plaintiff's face after he was handcuffed was reasonably necessary to maintain discipline and order, and thus lawful. Cf. Marquez v. Gutierrez, 322 F.3d 689, 692-93 (9th Cir. 2003) (granting qualified immunity where reasonable officer could believe that shooting one inmate in the leg to stop an assault that could have seriously injured or killed another inmate was a good faith effort to restore order, and thus lawful).

While resolution of the factual issues may well relieve defendants of any

liability in this case, if plaintiff's version of the facts were to prevail at trial, a reasonable jury may conclude that defendants used unreasonably excessive force in violation of plaintiff's due process rights. Summary judgment is not appropriate as to plaintiff's excessive force claim against defendants because there are genuine issues for trial and qualified immunity is not in order as a matter of law.

2. Deliberate indifference to serious medical needs

Plaintiff claims defendants were deliberately indifferent to his serious medical needs because they denied him adequate medical care after he was involuntarily placed in the safety cell. Specifically, plaintiff claims that JHS nurse Bendebel and JPS therapist Stacey Nelson refused to send him to the hospital for his injuries from the deputies and/or for his self-harming behavior, and that Sgt. Cabebe failed to intervene.

Claims of failure to provide adequate care for serious medical needs brought by pretrial detainees arise under the Due Process Clause of the Fourteenth Amendment. See Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996). But courts use the Eighth Amendment's deliberate indifference standard as a benchmark for evaluating those claims. See id.; see also Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc) ("The requirement of conduct that amounts to 'deliberate indifference' provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons.").

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment, Estelle v. Gamble, 429 U.S. 97, 104 (1976), and the Fourteenth Amendment's substantive due process clause, Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir.

2003).  A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing Estelle, 429 U.S. at 104), overruled in part on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A prison official is "deliberately indifferent" if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994). Negligence is not enough for liability under the Eighth or Fourteenth Amendments.  See id. at 835-36 & n.4 (negligence is not actionable under § 1983 in the prison context); County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process).

The undisputed facts show that plaintiff was examined by JHS nurse Bendebel shortly after he was placed in the safety cell, at around 7:44 p.m. Bendebel noted that plaintiff was jumping up and down, standing on the toilet and hitting the ceiling with his fist.  Plaintiff told her that "deputies had stepped on him," but she found "no visible traumas on exam." JHS Custodian Decl. Ex. C at 1.  Bendebel only noted that plaintiff had an abrasion on his left cheek and that his wrist appeared slightly swollen.  The abrasion was "not a cut or laceration – [Bendebel] did not see any bleeding, swelling or bruising."  Bendebel Decl. ¶ 5.

Plaintiff was next examined in the safety cell at 9:15 p.m. by JPS therapist Stacey Nelson.  Nelson wrote in her notes that plaintiff "presents as entitled and threatening, 'You better let me go to the hospital!'" JHS Custodian Decl. Ex. D. at 1.  She noted that he was not suffering from hallucinations and that his thoughts were "organized and coherent," but that plaintiff was "fixated on going to the

hospital." Id. Nelson added:

> Client is known for superficial cutting and acting out for secondary gain. Client was tearing off string from safety garment and showing this writer and threatening to use it. Subsequently, safety garment and string were taken from client. It is believed that current behavior is volitional and not due to any mental disorder. Client does not currently meet [California Welfare and Institution Code section] 5150 criteria and will be contained in [safety cell] and reevaluated next [JPS] shift for any self-injurious behavior.

Id. Nelson and other JPS staff went home at 10:00 p.m., as customary.

Plaintiff was examined again at 10:03 p.m. by nurse Bendebel. Bendebel observed that plaintiff was continuing to step up on the toilet and hit the ceiling with his hands. She examined plaintiff's hands and noted that his right wrist appeared more swollen than his left one and that there was redness, but "no bleeding or hematoma." JHS Custodian Decl. Ex. E at 1. Plaintiff also appeared to have "pecked" at an old scar on his left wrist. Id.

Bendebel next observed plaintiff through the safety cell window at 11:44 p.m. A deputy requested that she evaluate plaintiff because deputies had seen him picking at his skin on his wrists. Bendebel observed a "scant" amount of blood from "superficial bleeding." JHS Custodian Decl. Ex. F at 1. But plaintiff refused to be examined and told her that, "I want to go to the hospital, otherwise, I will continue to hurt myself." Id. Bendebel noted that plaintiff was removing styrofoam from the padded walls of the safety cell and threatening to eat it.

Because Bendebel believed that plaintiff's behavior had escalated, she called mental health staff at San Francisco General Hospital (SFGH) to discuss whether plaintiff should be hospitalized. Bendebel spoke with the charge nurse at SFGH's Psychiatric Emergency Services (PES), part of SFGH's emergency room, and was told that "PES was full and diverting new patients to other facilities." Bendebel Decl. ¶ 9. At Bendebel's request, the charge nurse consulted with a PES psychiatrist concerning plaintiff's behavior and advised

Bendebel that plaintiff could not be taken to SFGH unless a qualified mental health professional ordered him transported there pursuant to section 5150 and that Bendebel should "continue with plaintiff's safety cell placement." Id.

Not entirely satisfied or comfortable with the response from PES, Bendebel called the charge nurse of the non-emergency psychiatric ward at SFGH concerning plaintiff's behavior. Bendebel was advised that if plaintiff's behavior continued to escalate, she could send him to the emergency room, where a consultation with PES would be arranged. But based on Bendebel's report of plaintiff's current behavior, the charge nurse recommended that Bendebel "continue with plaintiff's safety cell placement." Id. ¶ 10. "Fortunately, plaintiff began to quiet down later in the evening and the rest of his stay in the safety cell was uneventful." Id.

After her conversations with SFGH mental heath personnel, Bendebel spoke with the night watch commander, Sgt. Cabebe, and informed him of the advice she had received from such persons. Bendebel added that, based on this advice and her professional judgment, she "did not believe that plaintiff needed to be transported to SFGH, as plaintiff was not physically injured and, more to the point, did not appear in danger of genuinely harming himself." Id. ¶ 11. Sgt. Cabebe never instructed Bendebel or otherwise told her not to take plaintiff to SFGH and/or deny plaintiff any medical care. Id.; Cabebe Decl. ¶ 4.

Plaintiff claims that Bendebel, Nelson and Cabebe were deliberately indifferent to his serious medical needs because they refused to send him to the hospital for his injuries from the deputies and/or for his self-harming behavior. Not so. The undisputed facts make clear that defendants did not disregard plaintiff's purported injuries from the deputies and/or self-harming behavior; rather, the undisputed facts show that defendants took reasonable steps to abate

any substantial risk of serious harm to plaintiff by promptly examining him and determining that he had suffered no serious injuries from the deputies, monitoring his behavior every hour or so, and seeking repeated advice from mental health professionals as to whether plaintiff should be transported to a hospital or maintained in the safety cell. See Farmer, 511 U.S. at 837. Plaintiff's insistence that defendants should have taken him to a hospital rather than maintained him in the safety cell at most states a claim for negligence not cognizable under § 1983. See id. at 835-36 & n.4; Lewis, 523 U.S. at 849. At minimum, defendants are entitled to qualified immunity because a reasonable officer could have believed that maintaining plaintiff in the safety cell was lawful under the circumstances. See Saucier v. Katz, 533 U.S. 194, 205-06 (2001).

Defendants are entitled to summary judgment on plaintiff's claim of deliberate indifference to his serious medical needs as a matter of law. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).

C.      Request for Continuance

Since defendants filed their motion for summary judgment on December 17, 2009, plaintiff has sought and obtained numerous extensions of time to respond. On June 7, 2010, plaintiff was granted a final extension of time to July 16, 2010 and was advised that no further extensions would be granted. The court also intervened on plaintiff's behalf and instructed his custodian (who is not a defendant in this action) to provide him reasonable access to his legal materials so he can comply with the court's deadline.

Plaintiff has not filed a response despite having had more than nine months to do so; instead, he seeks yet more time to prepare a response, claiming he has not received a copy of SFCJ's restraint chair policy or a working copy of an audio CD of an internal affairs interview. The request for yet more time to

prepare a response is denied as not warranted. Plaintiff has had more than ample time to prepare and file a response. There is no indication that he was precluded from doing so, or that he needs additional time because he is seeking discovery essential to opposing defendants' motion for summary judgment. See Fed. R. Civ. P. 56(f). Plaintiff defeated defendants' motion as to his excessive force claim without the information sought and there is no indication that the information sought would preclude summary judgment on his deliberate indifference to serious medical needs claim. See Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998) (party seeking continuance to oppose summary judgment under Rule 56(f) must make clear what information is sought and how it would preclude summary judgment).

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (docket # 68) is GRANTED as to plaintiff's claim of deliberate indifference to serious medical needs and DENIED as to plaintiff's claim of excessive force. Plaintiff's request for a continuance and additional discovery (docket # 98) is DENIED.

The court finds that a referral to a magistrate judge for settlement proceedings is in order and hereby REFERS this case to Magistrate Judge Vadas for settlement proceedings. All other proceedings are stayed.

A settlement conference shall take place within 120 days of the date of this order, or as soon thereafter as is convenient to the magistrate judge's calendar. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the court a report regarding the conference.

The clerk shall provide a copy of this order to Magistrate Judge Vadas.

SO ORDERED.

DATED: Sept. 16, 2010

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.08\Walker, J1.msj.wpd